**UNITED STATES BANKRUPTCYCOURT FOR THE
DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>BLUEPRINT INVESTMENT FUND, LLC,<br><br>Debtor. | Case No. 22-11059 JGR<br>Chapter 11 |

**MOTION FOR ENTRY OF ORDER APPROVING DEBTOR-IN POSSESSION
FINANCING FROM LEGALIST DIP GP, LLC**

Blueprint Investment Fund, LLC ("Debtor") through counsel, pursuant to 11 U.S.C. § 362, 363, 364, and Fed. R. Bankr. P. 4001, and L.B.R. 4001-2 and 9014, files this Motion for Entry of Order Approving Debtor-In-Possession Financing From Legalist DIP GP, LLC (this "Motion") as follows:

**CONCISE STATEMENT OF RELIEF REQUESTED**

1. Debtor is seeking approval of a debtor-in-possession loan in the approximate amount of up to $7.5 Million (the "DIP Loan") to pay off current liens secured by 29973 Hilltop Drive, Evergreen, CO 80439 (the "Property") and fund the completion of the project, which is the horizontal development of a single multi-family parcel with 47 townhome lots. Based on an appraisal prepared for Builders Capital, the first lienholder on the Property, development of the project will increase the Property's value from $4.8 million to $15.6 million. Debtor anticipates that the initial phase of the DIP lending will allow it to pay off current liens and begin the entitlement phase of the project. The Debtor will use the second and remaining phase of the DIP lending to complete the site with infrastructure in place.

2. The DIP Loan is essential to Debtor's ability to generate additional revenue to develop the project and to assist in formulating a plan of reorganization. LEGALIST DIP GP, LLC ("Lender") has agreed to provide the DIP Loan on terms and conditions which are set forth in the Term Sheet between Debtor and Lender, which is attached hereto as **Exhibit 1**.

3. Pursuant to Fed. R. Bankr. P. 4001(c)(1)(B) and LBR 4001-2(a)(1), the following is a summary of the terms of the Term Sheet, loan, and the proposed order approving the DIP Loan:

    A. maximum borrowing available on a final basis: *$7.5 Million*

    B. interim borrowing limit: *$2.5 Million for the first phase and an aggregate of $5 Million in the second phase drawn in $1 Million milestones.*

    C. borrowing conditions: *Lender's completion of any remaining due diligence, Debtor's delivery of a fully executed credit agreement, and Entry of Order approving the DIP Loan.*

    D. interest rate: *variable at U.S. prime rate (subject to a 4% floor) plus 9.5% per year. In the event of default such amounts shall accrue an additional 4.75% in interest per year. Any amounts not borrowed in full in a single draw, any undrawn portion of the DIP Commitment, as defined in the Term Sheet, shall accrue an Undrawn Line Fee at 4.75% per year.*

    E. fees, costs and charges paid or payable by Debtor or any other person or entity: *a one-time Commitment Fee of 1.8% of the DIP Commitment, an Underwriting Fee of 1.37% of the DIP Commitment, Monitoring Fee of 1.1% of the DIP Commitment per year. In the event the DIP Loan is not effected, Lender shall be entitled to a breakup fee of 4.75% of the DIP Commitment.*

    F. maturity: *the earliest of (i) 547.5 days after entry of an order approving this Motion (the "Effective Date"), (ii) Debtor's exit from bankruptcy, and (iii) acceleration of the DIP Loans following an event of default.*

    G. events of default: *nonpayment upon maturity or unauthorized use of DIP Loan.*

    H. remedies in the event of default: *accrual of additional default interest of 4.75% per year and remedies provided in the pending loan documents.*

    I. use of funds limitations: *repayment of legal fees, refinance/pay down prepetition lenders, and operating and administrative expenses of Debtor.*

    J. protections afforded under 11 U.S.C. § 363: *Not applicable.*

    K. protections afforded under 11 U.S.C. § 364: *Subject to a customary carveout for estate professional fees and other administrative expenses, Lender shall be entitled to a super priority senior lien on all present or future estate property*

    L. line-item budget: *Estimated interim construction budget will be provided as* **Exhibit 2** *in a supplement.*

4. In compliance with L.B.R. 4001-2, the following is the location of any of the following provisions or findings of fact in the proposed form of order and/or underlying cash collateral stipulation or loan agreement by page, paragraph and/or line number, together with the justification for the inclusion of each such provision or finding of fact:

    A. Cross-collateralization that secures pre-petition debt by post-petition assets not otherwise subject to the secured party's pre-petition security interest, except as a means of providing adequate protection for use of cash collateral, to the extent of deterioration of a secured creditor's position: *Not applicable.*

    B. Binding the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's lien or debt: *Generally, not applicable; but see Paragraph 4 of the Proposed Order granting Lender a perfected first priority lien in all present and future estate property.*

    C. Waivers of §506(c): *Not applicable.*

    D. Provisions that operate to divest the debtor-in-possession of any discretion in the formulation of a plan, administration of the estate or limit access to the Court to seek any relief under other applicable provisions of law: *Not applicable.*

    E. Releases of liability for the creditor's alleged pre-petition torts or breaches of contract: *Not applicable.*

    F. Waivers of avoidance actions arising under the Bankruptcy Code: *Not applicable.*

    G. Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee: *Not applicable.*

    H. Waivers of the procedural requirements for foreclosure mandated under applicable non-bankruptcy law: *Not applicable.*

    I. Adequate protection provisions that create liens on claims for relief arising under the Bankruptcy Code (see 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549): *Not applicable.*

    J. Waivers, effective on default or expiration, of the debtor's right to move for a Court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent: *Not applicable.*

    K. Findings of fact extraneous to the approval process: *Not applicable.*

## JURISDICTION

5. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (D).

6. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7. Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code on March 30, 2022 ("Petition Date"). Debtor is a debtor-in-possession, and no trustee has been applied for or appointed in this case. No committee of creditors has been appointed.

8. Debtor purchased the Property in 2018 and granted Builders Capital a secured lien in the Property. Debtor currently holds the Property with undeveloped lots. Debtor intends to horizontally develop the single multi-family parcel with 47 townhome lots. Prior to bankruptcy, disputes arose with third parties as to easement and access rights affecting the Property. These issues have since been resolved but created a significant delay in the project's development.

9. As of the Petition Date, the Property is subject to a first lien by Builders Capital, a second deed of trust held by Old Republic National Title Insurance Co., and an assessment lien by Evergreen Metropolitan District. Debtor estimated that these liens totaled approximately $1.75 Million as of the Petition Date, which have continued to increase post-petition. Accordingly, Debtor is requesting exact payoff amounts from all secured parties.

10. Debtor's counsel has conferred with counsel for Builders Capital regarding the relief sought in this Motion, to which they have no objection.

11. On or about December 20, 2021, Builders Capital performed an appraisal on the Property. According to the appraisal, as of December 20, 2021, the Property was valued at $4.8 Million "as is" consisting of the undeveloped lot, $5.3 Million "As Entitled," and $15.6 Million "As Complete," once the project is developed.

## NEED FOR DIP LOAN

12. The DIP Loan is necessary to fund completion of the horizontal development project on the Property. Funding the project as soon as possible is essential to its ability to proceed with the entitlement and development of the project, greatly increasing the Property's value and ultimately generating material revenue.

13. Moreover, all current secured liens, taxes, and other debts associated with the Property will be paid in full through first disbursement of the DIP financing. The remaining DIP Financing will be used to fund the operations and development of the Property. Through DIP Financing, all parties are able to be paid in full while allowing the Property development to continue, which will ultimately increase the Property's value and generate a return to the Debtor and its estate. DIP Funding will allow all other debts to be paid in full and allow Debtor to maximize the Property's potential as originally planned.

14. Debtor estimates that after paying off all current debts on the Property and any ongoing administrative expenses, the remainder of the DIP Financing will be used to fund the horizontal development project on the Property.

### DIP LOAN TERMS

15. The material terms of the DIP Loan are outlined in paragraphs 3 and 4 of this Motion and are further detailed in the Term Sheet and the proposed form of Order granting this Motion. Essentially, Lender has agreed to advance up to $7.5 Million in two phases to payoff current debts, pay administrative expenses, and fund ongoing operating expense necessary to fund the project's development.

16. Lender will be granted priority liens on all present and future estate estates, pursuant to 11 U.S.C. § 364(c) to secure the DIP Loan.

17. Upon the Maturity Date of the DIP Loan, all DIP Loans, including interest and fees described above, shall mature and all unpaid DIP Obligations shall be due and payable.

### ARGUMENT AND AUTHORITY

18. Section 364(c) of the Bankruptcy Code provides, in relevant part, that if a debtor is unable to obtain unsecured credit under § 503(b)(1), a court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt "secured by a lien on property of the estate that is not otherwise subject to a lien …" See 11 U.S.C. § 364(c)(2). The Bankruptcy Code further provides that a court may authorize that the claim of the lender will have "priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) . . .." 11 U.S.C. § 364(c)(1).

19. Debtor has not attempted to obtain unsecured credit to fund the project because it believes such an effort to be futile. Debtor has been unable to obtain any offers for financing with more favorable interest and repayment terms because of the short time periods involved and nature of the Property. Debtor has discussed obtaining financing from other potential lenders, but this Lender has offered the most favorable terms in a short time period. Therefore, Debtor has chosen to proceed with Lender.

20. Debtor and its estate will realize significant benefits from the DIP Loan. The DIP Loan will enable Debtor to complete the horizontal development project on the Property, which will immediately result all current debts being paid in full, allow ongoing operating revenue to complete the project, and avoid the damages that would be incurred if the project was not completed.

12

21. The DIP Loan is being made pursuant to Term Sheet and additional loan documents with Lender.

22. The DIP Loan was negotiated at arm's length, and Debtor believes that the terms are not only fair and reasonable, but advantageous.

23. Debtors are unaware of any source of unsecured credit for to develop this project. Debtor believes that no other lender would be willing to provide a similar loan. Since no other lender is likely to provide the necessary credit, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co.,* 789 F.2d 1085, 1088 (4th Cir. 1986). Where there are few lenders likely to be able or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom, Anchor Savings Bank FSB v. Sky Valley, Inc.,* 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

24. The proposed terms of the DIP Loan are fair, reasonable. and adequate in that these terms do not tilt the conduct of this case and prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors or prevent motions by parties in interest from being decided on their merits. The purpose of the DIP Loan is to enable Debtor to add as much value of its estate as it can, pending the closing of a sale of substantially all of Debtor's assets. *See In re First South Sav. Ass'n,* 820 F.2d 700, 710-15 (5th Cir. 1987); *In re Tenney Village Co.,* 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989).

25. Debtors' business judgment on most business decisions, including the decision to borrow money, is entitled to deference. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.,* 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court"); *In re Lifeguard Indus., Inc.,* 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983). In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of loan proceeds unless its decision is arbitrary and capricious. *See In re Curlew Valley Assocs.,* 14 B.R. 507, 511-13 (Bankr. D. Utah 1981).

## NEED FOR HEARING AND FINAL APPROVAL

26. Pursuant to Fed. R. Bankr. P. 4001, the Court may set a final hearing on a motion for authority to obtain credit fourteen (14) days after service of the Motion. Fed. R. Bankr. P. 4001(c)(2). In light of the need to commence construction as soon as possible, Debtors request the first permissible date available on the Court's calendar. However, undersigned counsel will be out of town on pre-planned vacation May 23rd through May 31st and requests the Court set the hearing before, if possible, or after that time period.

27. Pursuant to Fed. R. Bankr. P. 4001(c), Debtor has served a copy of this Motion via U.S. mail first class postage prepaid to (i) Debtor's twenty (20) largest unsecured creditors; (ii) any parties who have filed a request for notice under the Bankruptcy Rules; and (iii) such other parties as are entitled to notice under Bankruptcy Rule 2002, including Lender. Debtor submits that the foregoing notice is adequate and sufficient for all purposes under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, and the Local Rules of Bankruptcy Procedure for the District of Colorado.

**WHEREFORE**, Debtors request that the Court enter an Order: (1) granting this Motion; (2) authorizing Debtor to borrow up to $7.5 Million in debtor-in-possession financing from Lender on the terms set forth herein; (3) to secure the DIP Loan, authorizing Debtor to grant the first and prior liens in all present and future estate property; (4) setting a final hearing on this Motion at the earliest date available that is at least 14 days from the filing of this Motion; and (5) granting such other relief as the Court deems proper.

Dated May 3, 2022

*/s/ Katharine S. Sender*
Katharine S. Sender, 47925
1720 S. Bellaire St; Ste 205
Denver, CO  80222
Phone: (303) 933-4529
Fax: (866) 230-8268
ksender@cohenlawyers.com